UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INNOVATION VENTURES, LLC,

              Plaintiff/Counter-Defendant,

                                      Case No. 09-13783
v.                                   Hon. Lawrence P. Zatkoff

BHELLIOM ENTERPRISES CORP.,

              Defendant/Counter-Plaintiff.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on July 26, 2011

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendant/Counter-Plaintiff's ("Defendant") motion for

summary judgment [dkt 46], Plaintiff/Counter-Defendant's ("Plaintiff") motion for summary

judgment on Defendant's counterclaims and affirmative defenses [dkt 49], Plaintiff's motion for

partial summary judgment on its false advertising claim [dkt 52], Plaintiff's motion to strike

evidence and argument presented by Defendant [dkt 67], and Plaintiff's motion to strike Defendant's

untimely motion for summary judgment [dkt 73]. The motions have been fully briefed. The Court

finds that the facts and legal arguments are adequately presented in the parties' papers such that the

decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D.

Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted.

The motions will be addressed in turn.

## II.  BACKGROUND

Plaintiff markets and sells a two-ounce energy shot using the "5-hour ENERGY" mark. Defendant markets and sells energy pills and two-ounce energy shots using the "8-HR" and "ENERGY" marks on its products.  Initially, Defendant sold energy pills under the name "Mr Energy® 8-HR MAXIMUM STRENGTH ENERGY", and then developed its two-ounce shot sold under the same name.  On both of Defendant's products, however, the words "8-HR" and "ENERGY" appear in larger print than "Mr Energy®" and "MAXIMUM STRENGTH".

Plaintiff brings claims against Defendant under the Lanham Act, 15 U.S.C. § 1125(a), for trademark infringement and false advertising, as well as a claim for common law trademark infringement. Defendant has asserted counterclaims for infringement of Defendant's registered trademark, "Mr Energy", trademark dilution, and false designation of origin and sponsorship under the Lanham Act.

## III.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

### A. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: TRADEMARK INFRINGEMENT

#### 1. Entitlement to Trademark Protection

"'The existence and extent of trademark protection for a particular term depends on that term's inherent distinctiveness.'" *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 748 (6th Cir. 1996) (quoting *Blinded Veterans Ass'n. v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1039 (D.C. Cir. 1989)). "Putative trademarks may either: (1) be inherently

distinctive or (2) acquire distinctiveness through secondary meaning." *DeGidio v. West Grp. Corp.*, 355 F.3d 506, 510 (6th Cir. 2004) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992)).

> Within the two basic categories are sub-categories that form the complete spectrum of distinctiveness of marks. Arrayed in an ascending order roughly reflecting their eligibility to trademark status and the degree of protection afforded, the categories are: (1) generic terms; (2) descriptive; (3) suggestive; (4) arbitrary or fanciful. Generic terms can never be trademarks, descriptive terms are not inherently distinctive and suggestive, arbitrary and fanciful terms are regarded as being inherently distinctive.

2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION ("MCCARTHY") § 11:2 (4th ed. 2011). "A generic . . . term is one which is commonly used as the name or description of a kind of goods. It cannot become a trademark under any circumstances." *Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984); MCCARTHY § 12:1 ("APPLE is a generic name for the edible fruit of the apple tree, but is a trademark for computers[.]"). "Whether a name is generic is a question of fact." *Bath & Body Works, Inc.*, 76 F.3d at 748 (citation omitted).

"[A] trademark is merely descriptive if it describes one, or more, of the following: 'the intended purpose, function or use of the goods . . . the class of users of the goods; a desirable characteristic of the goods; or the end effect upon the user.'" *DeGidio*, 355 F.3d at 510 (citing *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1190 (6th Cir. 1988)). "'A merely descriptive term . . . can, by acquiring a secondary meaning, *i.e.*, becoming 'distinctive of the applicant's goods' . . . become a valid trademark.'" *Bath & Body Works, Inc.*, 76 F.3d at 748 (quoting *Induct-O-Matic Corp.*, 747 F.2d at 362. In order to determine secondary meaning, the Sixth Circuit looks to the following factors: (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) amount and manner of advertising; (5) amount of sales and number of customers; (6)

4

established place in the market; and (7) proof of intentional copying. *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 311–12 (6th Cir. 2001).

Defendant first argues that Plaintiff's "5-hour ENERGY" mark is generic and therefore not entitled to trademark protection under any circumstances, but Defendant cites to no evidence or materials on record in support of this assertion.   A generic mark represents the common name for a particular good, and Defendant has not pointed to any evidence showing that "5-hour ENERGY" is viewed as the common name for a two-ounce energy shot, even one providing users with five hours of energy.  Rather, it seems apparent that the "5-hour ENERGY" mark is merely descriptive, in that it describes the function of the product, *i.e.*, users will be provided with five hours of energy by consuming the product.[1]

Anticipating the likelihood of the Court reaching this conclusion, Defendant also argues that even if the mark is merely descriptive, it has not achieved secondary meaning.  But while Defendant acknowledges the factors this Court must consider in determining whether a mark has secondary meaning, Defendant has presented no evidence or intelligible argument regarding the applicable factors.  Such an unsupported argument provides an insufficient basis upon which to grant summary judgment.[2]

_____

[1]Plaintiff does not argue that the mark is entitled to protection greater than that accorded to a merely descriptive mark.

[2]Defendant also argues that any secondary meaning would only constitute "de facto" secondary meaning, which courts have found to be an insufficient basis upon which to exclude others from using marks. However, the Court finds that Defendant misapplies the doctrine of de facto secondary meaning, as it only relates to the secondary meaning acquired by a generic mark. *See* MCCARTHY § 12:47.  Having failed to demonstrate that Plaintiff's mark is generic, argument relating to de facto secondary meaning is irrelevant.

5

## 2.      Likelihood of Confusion

Next, Defendant argues that even if the "5-hour ENERGY" mark is entitled to trademark

protection, Plaintiff's claim must be dismissed because there is no likelihood that consumers would

be confused by Plaintiff's and Defendant's marks.

The Lanham Act prohibits the use of any word, term, or name which "is likely to cause

confusion . . . as to the origin, sponsorship, or approval of his or her goods."  15 U.S.C. § 1125(a).

To prevail on its trademark infringement claim, Plaintiff must show that Defendant's mark creates

a likelihood of confusion regarding the origin of the goods offered by Plaintiff and Defendant.  *See*

*Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 629 (6th Cir. 2002).  In determining whether

a likelihood of confusion exists, the Sixth Circuit considers the following factors:

> (1) the strength of the plaintiff's mark, (2) the relatedness of the
> goods or services offered by the plaintiff and the defendant, (3) the
> similarity of the marks, (4) any evidence of actual confusion, (5) the
> marketing channels used by the parties, (6) the probable degree of
> purchaser care and sophistication, (7) the defendant's intent in
> selecting its mark, and (8) the likelihood of either party expanding its
> product line using the marks.

*Therma-Scan, Inc.*, 295 F.3d at 630 (citations omitted).  While not all of the factors are relevant in

every case, "[t]he ultimate question remains whether relevant consumers are likely to believe that

the products or services offered by the parties are affiliated in some way." *Id.* (citation omitted).

Whether confusion exists "is a mixed question of fact and law," but the ultimate determination of

whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion.

*Id.* at 630–31.

In considering the above factors, the Court finds that factors two, five and six weigh in favor

of Plaintiff; the products are related in that they are energy products, the products are sold using

6

similar marketing channels, *i.e.*, convenience stores, and consumers tend to purchase the products without great care.[3]  Also, there is no evidence that the eighth factor favors either party.

With respect to factor one, the strength of Plaintiff's mark, the Court finds that it tends to favor Defendant due to its descriptive nature.  *See Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 571 (6th Cir. 1987) (noting that descriptive marks "are considered 'weaker,' and confusion is said to be less likely where weak marks are involved").

With respect to factor three, the similarity of the marks, the Court finds that this weighs heavily in favor of Defendant, as the marks are decidedly dissimilar.  While Plaintiff claims that Defendant is infringing its "5-hour ENERGY" mark by using the "8-HR ENERGY" mark, Defendant responds that Plaintiff's depiction of its mark is inaccurate.  According to Defendant, the mark it uses is "Mr Energy® 8-HR MAXIMUM STRENGTH ENERGY".  Examination of the cited materials, which includes photographs of the parties' products, reveals that Defendant is correct, even though "8-HR" and "ENERGY" appear larger than "Mr Energy®" and "MAXIMUM STRENGTH".  The "8" on Defendant's mark also contains a clock, with the minute hand at 12 and the hour hand at 8, along with an arrow circling clockwise.  Thus, when viewed as they appear in the marketplace, the marks are distinct.  Furthermore, Defendant's mark is preceded by its registered trademark, "Mr Energy®", thus lessening the potential for confusion.  *See Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1441 (S.D. Ohio 1990) ("The house mark of a company tends to de-emphasize the contested mark as a source of the goods or services.") (citing *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1265 (6th Cir. 1985)).

---

[3]Defendant claims that purchaser care is high for the products at issue, but offers no evidence in support of that assertion.  Plaintiff, on the other hand, has produced an expert report concluding that purchaser care is low for energy products.

With respect to factor four, evidence of actual consumer confusion, the Court finds that it favors neither party.  Plaintiff attempts to show actual confusion among consumers through a consumer survey conducted by one of its experts, and through testimony of Defendant's CEO that Defendant received telephone calls by consumers, asking if Defendant sold 5-hour ENERGY.   In Plaintiff's expert report, the expert analyzed a consumer survey conducted by a different expert in a different case, where the confusion between "5-hour ENERGY" and "Mr. Energy® 8-HR MAXIMUM STRENGTH ENERGY" was not analyzed in detail.  Plaintiff's expert states that the prior survey had "a number of methodological errors in the design of the survey" and that such errors underestimated the likelihood of confusion between the products.  According to Plaintiff's expert, had "a more appropriate methodology" been applied, the likelihood of confusion would have been greater.  However, considering that Plaintiff's own expert acknowledges that his examination was based on a flawed survey, the Court declines to give Plaintiff's expert report significant weight, especially given its speculative nature. *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 518 (6th Cir. 2007) ("Where a survey presented on the issue of actual confusion reflects methodological errors, a court may choose to limit the importance it accords the study in its likelihood of confusion analysis.").

Regarding the consumer inquiries, the Court finds that mere inquiries such as these are insufficient to demonstrate actual confusion. First, the inquires do not support a finding that the customers believed that Plaintiff's product was made by Defendant, and second, the inquiries suggest that the customers may have been aware of different product sources. *See Duluth News-Tribune v. Mesabi Publ. Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996) ("The question to the reporter who was asked to specify which News-Tribune he worked for indicates a distinction in the

8

mind of the questioner, rather than confusion.").

With respect to factor seven, Defendant's intent in selecting its mark, the Court finds that it favors neither party.  In considering this factor, the Court must determine whether "the mark was adopted with the intent of deriving benefit from the reputation of the plaintiff." *Frisch's Restaurants Inc.*, 670 F.2d at 648.  Defendant argues that it selected the "Mr Energy® 8-HR MAXIMUM STRENGTH ENERGY" mark by using its registered mark in connection with a description of the product's function, noting that for marketing purposes, it desired to advertise the product as working for a full 8-hour work day.  Plaintiff contends that the Court may infer intent from Defendant's knowledge of Plaintiff's mark and the similarity of the mark chosen by Defendant.  However, as discussed *supra*, the Court does not find that the marks are sufficiently similar to draw such an inference.

Having considered the above eight factors together, the Court finds that Plaintiff has failed to demonstrate a likelihood of confusion.  Pivotal in the Court's decision is the dissimilarity between the marks, especially when combined with the descriptive nature of Plaintiff's mark. *See Little Caesar Enters., Inc.*, 834 F.2d at 572 ("Little Caesar has a relatively strong mark, the products and services involved are similar, and the level of consumer care is low. On the particular facts before us, however, the third factor seems more significant; we think the marks are sufficiently distinct to make confusion unlikely.").  By selling its product under the descriptive name, "5-hour ENERGY", without further information as to the source of the product, Plaintiff necessarily assumed the risk of encountering competitive descriptive products in the marketplace. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) (noting "the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first" and

that there is "no indication that the [Lanham Act] was meant to deprive commercial speakers of the ordinary utility of descriptive words").[4]  Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's trademark infringement claims.[5]

## B.   CROSS MOTIONS FOR SUMMARY JUDGEMENT RE: FALSE ADVERTISING

In its complaint, Plaintiff alleges that Defendant has made false statements in connection with the sale of its energy pill and its energy shot.  Both parties have filed motions for summary judgment with respect to this claim.[6]

Regarding Defendant's energy pill, Plaintiff alleges that Defendant has falsely advertised the product as containing time-released caffeine and as being based on a 2004 study conducted by researchers at Harvard University ("Harvard study").  In 2005, Defendant decided to develop an energy pill product purporting to provide consumers with energy for an extended period of time.  Defendant's inception of this product was based on the results of the Harvard study, which touted the superiority of ingesting low doses of caffeine over time as opposed to ingesting a large initial dose of caffeine.  Defendant decided to named its product "Mr Energy® 8-HR MAXIMUM STRENGTH ENERGY" because it wanted to advertise its product as lasting the length of a normal work day, *i.e.*, 8 hours.  To develop its product, Defendant contacted Garden State Nutritionals

---

[4]Having found no likelihood of confusion between the two marks, the Court need not consider Defendant's "fair-use" defense.

[5]While Defendant also seeks summary judgment on Plaintiff's claim for trade dress infringement, Plaintiff responds that although its complaints makes reference to trade dress, it is not asserting any claim against Defendant for trade dress infringement.  Accordingly, Defendant's motion for summary judgment as to trade dress is denied as moot.  Additionally, Plaintiff's motion to strike evidence and argument presented by Defendant [dkt 67] is denied as moot, since none of the challenged evidence or argument is relevant to the Court's decision.

[6]In response to Defendant's motion for summary judgment, Plaintiff asserts that it incorporates the evidence and argument presented in its motion for summary judgment.

("GSN"), a leading nutritional supplement manufacturer, and asked for quotes on two pill-form products—one containing timed-released caffeine and one containing conventional caffeine.  GSN provided Defendant with quotes for both pills, and Defendant decided to purchase a formulation containing conventional caffeine.

In December 2006, Defendant released its "Mr ENERGY® 8-HR MAXIMUM STRENGTH ENERGY" pill product.  Defendant issued a press release advertising its product as a "time released energy pill" based on a Harvard study stating that time-released caffeine was more effective at achieving sustained energy levels than single doses of caffeine.  Defendant also advertised on its website that its energy pill slowly released energy over time, as opposed to bombarding the consumer's system with caffeine in one large serving.

With respect to Defendant's energy shot, Plaintiff complains that a graph appearing on Defendant's website falsely states: (1) Defendant's shot provides energy for 8 hours; (2) "other shots" crash after two hours; and (3) Defendant's shot has the ability to provide consumers with energy for up to 10 hours.  Plaintiff claims that the graph purports to contain scientific data, or that it was based on a clinical study, when in fact it was not based on neither.  Plaintiff's expert opines in his report that there is no evidence in clinical research literature to support the claim that Defendant's product could provide a user with 8 hours of energy.  Defendant responds that the graph does not purport to rely on data or studies, and that it is simply a visual depiction of 8 hours.

To establish a claim for false advertising under the Lanham Act, a plaintiff must prove that:

> (1) the defendant has made false or misleading statements of fact concerning his product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link

11

between the challenged statements and harm to the plaintiff.

*Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 323 (6th Cir. 2001) (citing *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999)).

Regardless of the first four factors listed above, the Court finds that Plaintiff has failed to demonstrate a genuine dispute regarding the causal link between the alleged false advertising and harm to Plaintiff.  *See IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 376 (5th Cir. 2002) (affirming grant of summary judgment on false advertising claim where, even if the challenged statement were literally false, the plaintiff presented no evidence indicating that consumers would have bought its product instead of the defendant's product in the absence of the defendant's allegedly false statement).  As Plaintiff asserts,

> [C]ases involving injunctive relief and those seeking monetary damages under the Lanham Act have different standards of proof. A plaintiff suing to enjoin conduct that violates the Lanham Act need not prove specific damage. In contrast, courts require a heightened level of proof of injury in order to recover money damages.

*Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1335 (8th Cir.1997) (citation omitted).  Here, Plaintiff presents no proof, through loss of sales or otherwise, that it incurred specific damages due to any of the allegedly false advertising.  At most, Plaintiff's expert makes the unsupported assertions that "[s]ome of [Defendant's] sales no doubt were drawn from consumers who might have purchased 5 Hour Energy" and that "it is completely logical for a consumer to be attracted to [Defendant]'s product."  However, there is no indication that this opinion was based on any data, studies, or other reliable methods.  As Plaintiff acknowledges in other briefs, "[Plaintiff] sells more of its 5-hour ENERGY product in one (1) day than [Defendant] has sold over a six (6) year period."

12

Additionally, the Court observes that the allegedly false statements have appeared solely on Defendant's press releases and websites; Plaintiff does not object to any advertising on Defendant's product packaging. The Court finds this distinction notable in determining whether Defendant has shown a likelihood that the challenged statements have caused it harm. In other briefs filed before the Court, Plaintiff takes the position that purchaser care is extremely low for energy products:

> Here, as Dr. Carpenter concluded, the degree of purchaser care is extremely low. . . . The products are very low priced, typically sold for $2.00 to $3.00. Consumers typically purchase the products in convenience stores while waiting in line to pay for other items such as gas or lottery tickets and thus, have little, if any, time to examine the labels.

If consumers typically purchase Plaintiff's and Defendant's products at convenience stores with minimal purchaser care, it is unclear how Plaintiff would suffer harm through statements that consumers could only observe by exercising a high degree of care, *i.e.*, researching Defendant's press releases and website. Although the standard of proof is lower for obtaining injunctive relief than it is for damages, Plaintiff must still demonstrate a likelihood that Defendant's advertising has caused or will cause harm to Plaintiff. *See IQ Prods. Co.*, 305 F.3d at 376. Here, Plaintiff has failed to make such a showing.[7] Accordingly, Defendant's motion for summary judgment on Plaintiff's false advertising claim is granted, and Plaintiff's motion is denied.

---

[7]Plaintiff relies on *Porous Media* for the assertion that harm is presumed where false advertising is willful and contained in comparative advertising. 110 F.3d at 1336 ("A predicate finding of intentional deception . . . *contained in comparative advertising*, encompasses sufficient harm to justify a rebuttable presumption of causation and injury in fact.") (emphasis in original). However, Plaintiff has failed to show that Defendant's allegedly false advertising was comparative. Defendant's representations about time-released caffeine provide no comparison between 5-hour ENERGY and Mr. Energy® 8-HR MAXIMUM STRENGTH ENERGY, and while Defendant's graph states that "other shots" crash after two hours, this does not specifically compare 5-hour ENERGY with Defendant's products. Accordingly, the *Porous Media* presumption of harm is inapplicable under the circumstances of this case.

13

C.   **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE: DEFENDANT'S COUNTERCLAIMS & AFFIRMATIVE DEFENSES**

1.   **Counterclaims**

In connection with the sale of its 5-hour ENERGY product, Plaintiff utilizes what it refers to internally as the "running man" logo, which features the silhouette of a man running. Defendant uses the running man logo on its bottle and in its advertising and refers to the fictional running man as "The Energy Guy." In 2009, Plaintiff added a feature to its website called "Ask The Energy Guy," in which the fictional character responded to questions asked by consumers about the company and its product. In six instances, Plaintiff referred to "The Energy Guy" as "Mr. Energy Guy" in connection with the question and answer feature. Those six instances provide the basis for Defendant's counterclaims.[8]

a.   *Trademark Dilution*

In Count II of its countercomplaint, Defendant claims that Plaintiff's use of "Mr. Energy Guy" dilutes the distinctiveness of Defendant's "Mr Energy" trademark under 15 U.S.C. § 1125(c), which states:

> Subject to the principles of equity, the owner of a *famous* mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark *has become famous*, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the *famous* mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

---

[8]In its brief in response to Plaintiff's motion, Defendant also requests that the Court grant summary judgment in its favor. Plaintiff objects that Defendant's filing constitutes an untimely dispositive motion and filed a motion to strike Plaintiff's request. For the reasons explained *infra*, Plaintiff's motion to strike [dkt 73] is denied as moot.

(emphasis added).  As emphasized *supra*, Defendant may only bring a claim for trademark dilution upon showing that its "Mr Energy" trademark is famous.  "[T]o meet the 'famousness' element of protection under the dilution statutes, 'a mark [must] be truly prominent and renowned.'" *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868 (9th Cir. 1999) (citations omitted).

In its motion for summary judgment, Plaintiff argues that Defendant's "Mr Energy" trademark is not famous, noting that Defendant does not advertise its trademark by either television, radio, or print media.  In its response, Defendant argues simply that it "markets its products on the Internet and in convenience stores" and that "[n]o one else markets dietary and nutritional supplement products using the Mr Energy ® mark."  Without more, however, Defendant has failed to produce evidence that would allow a reasonable jury to find that its "Mr Energy" trademark is truly prominent and renowned.  Accordingly, Plaintiff's motion for summary judgment on Defendant's trademark dilution claim is granted.

### b. Trademark Infringement & False Designation of Origin and Sponsorship

In Counts I and III of its counterclaim, Defendant claims that Plaintiff's use of the "Mr. Energy Guy" phrase constitutes trademark infringement and false designation of origin and sponsorship of its goods and services.  Plaintiff argues, *inter alia*, that Defendant's claims should be dismissed because: (1) Plaintiff has removed all references to "Mr. Energy Guy" from its website; and (2) there is a complete lack of evidence that the six instances in which Plaintiff used the "Mr. Energy Guy" phrase caused Defendant monetary harm. In its response to Plaintiff's motion, Defendant ignored these arguments and declined to come forward with any evidence of harm or potential future harm caused by Plaintiff's use of the "Mr. Energy Guy" phrase.  Defendant has thus conceded this issue, and the Court will grant Plaintiff's motion for summary judgment regarding

Defendant's claims for trademark infringement and false designation of origin and sponsorship.

**2.    Affirmative Defenses**

Plaintiff also seeks summary judgment with respect to Defendant's affirmative defenses, but since Plaintiff's claims have been dismissed on summary judgment, this issue is now moot. Accordingly, Plaintiff's motion to dismiss Defendant's affirmative defenses is denied.

## V.  CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment [dkt 46] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment on Defendant's counterclaims and affirmative defenses [dkt 49] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment on its false advertising claim [dkt 52] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion to strike evidence and argument presented by Defendant [dkt 67] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Plaintiff's motion to strike Defendant's untimely summary judgment motion [dkt 73] is DENIED AS MOOT.

IT IS FURTHER ORDERED that since all claims and counterclaims have been dismissed,

16

this case is now closed.

       IT IS SO ORDERED.

                          S/Lawrence P. Zatkoff
                          LAWRENCE P. ZATKOFF
                          UNITED STATES DISTRICT JUDGE

Dated:  July 26, 2011

CERTIFICATE OF SERVICE

      The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 26, 2011.

                          S/Marie E. Verlinde
                          Case Manager
                          (810) 984-3290

17